and others. Mr. Pietrantonio. Thank you, Your Honor. May it please the Court, Frank Pietrantonio and Nathan Cummings on behalf of Parus Holdings. In 1997, Parus invented a solution that addressed a specific technological problem with regard to combining the Internet and the telephone networks. That specific technological solution, as a consequence, not only satisfies the notion that it is not an abstract idea under either McRow or Enfish, but it is also clearly an inventive, the claims recite an inventive concept that allows it for patent eligibility under either BASCM or DDR. Parus invented a system that connects a voice server, a web server, a database server, and a file server, and that system cross-connects multiple networks having different protocols. So this is your unification theory? It's unification along with natural voice commands, Your Honor. I want to get to this debate before we get much farther beyond the start here about whether Claim 1 is really representative or not. You say that it is not because the additional claims or the 85 other claims actually get into more detail with respect to this unification theory, correct? That's correct, Your Honor. So if we concluded that your unification theory was still abstract, then it doesn't matter if the court was wrong about whether Claim 1 was representative, right? That's correct, Your Honor. If you conclude that the claims are directed only to unification, which we would contend they are not, but if you conclude they are only directed to unification and that is the abstract idea, then the representative claim issue falls away only as to the first part of Step 1. But the issue then becomes, what's the inventive concept that appears in various ones of the claims that actually draws that out? And we would say that as a consequence, you'd still need to look at at least Claim 1 of the 120 patent, if not other claims, that bring out those inventive concepts more clearly. And specifically the voice recognition technology and how that interacts with the other pieces of the technological claims? Yes, Your Honor. Yes, so if we were to take a look in connection with page 7 and 8 of the blue brief and we look at Claim 1 of the 120 patent, we can see that the voice server actually processes the natural voice commands in a very specific manner so as to then generate these computer generated messages under very specific commands. That, tied together with the file server and the web server along with those commands, then facilitates the communications that we're talking about across the various networks. So those tie-ins with regard to the specific natural voice command processing, as well as the connections to the file server and the web server, result in that unification under the control of natural voice commands. Now that voice recognition technology, you're still talking about generic, off the shelf voice recognition technology. Well, that's what the defendants have alleged, but we tried to make clear to the court below that this was not the case and that's in fact the reason why we submitted the declaration by the inventor, Alex Kurganoff. The fact of the matter is that while there was a list of parts in this specification, the patent application also incorporated by reference a provisional application that had along with it over 500 pages of code. And that code was important, as Mr. Kurganoff explained in paragraph 18 of his declaration, that these were specially adapted boards so as to provide this very connection that we were looking for and that didn't happen before this invention. And as a consequence, these elements were in fact not generic whatsoever. And there's nothing in the record to show that they were generic other than the assertion by the defendants that they were. The source code, which underlies the operations and ties all these things together, for instance, an NTERIS board that's referred to in Mr. Kurganoff's declaration, had to be modified so as to operate in an unconventional manner. And we were never provided with the opportunity below to show the unconventionality of any of the individual components which actually effect this invention. But that would have to be in the specification, would it not, for enablement? Well, the source code is considered part of the specification because it was part of that provisional application that was incorporated by reference, Your Honor. Yes, for every step and every connection. All of the connections. And we've in fact cited in our footnote on page 12 of the blue brief some excerpts from that source code, some of which were in fact cited before the patent trial and appeal board in connection with the covered business method petitions that defendants submitted. That information indicates, for instance, in footnote 12, we make reference to a code routine for converting a voicemail file from telephony format to a PC web format. These operations are all included within the source code that Mr. Kurganoff came up with and that we included in the application was originally filed as a provisional application. It's in the provisional, but not in the final. The text of it was not with the papers that were filed in the non-provisional application, but at the very beginning of the non-provisional patent application, all of the materials from the provisional patent application are incorporated by reference into this application. So they are all included in the non-provisional patent application. So I'd like to go back to talk a little bit about our position as it relates to step one with regard to the invention. This unification under the control of these natural voice commands actually addresses, as I said before, a problem that arose in connection with the arrival of the Internet. The reality is that as the patent application, I'm sorry, as the specification clearly describes in the background section, to be able to be fully connected into both the telephone network and the Internet, it was necessary to have access to multiple different electronic devices operating different protocols. What this invention then did, provided a network-oriented device, which sat at the cross-connection between the Internet and the telephone network, which allowed the user then under using natural voice commands to configure that network device to provide full accessibility across all of those protocols with a single access point. That's a technological solution. This voice server arrangement actually solved a problem that arose when the Internet came to be. This is different than the cases that the defendants have cited, where many of those cases really rely on the notion that there was a problem, a business problem, for instance, that was identified and then put onto the Internet or put onto computers, which caused those problems to be solved in that particular environment. This is a problem that arose in the environment itself. We see it as more like a McGrow situation or an EnFish situation, where we're not just using the computer to do something to solve some other problem that existed like a business problem, but instead to solve, yes. We're in claim one of the 600 patent, if we are looking at that as representatives, so just assume that for a minute, but where is that to describe? Or are you prepared to say, okay, maybe claim one doesn't have enough detail to do what you're saying or to accomplish what you're saying and that you're willing to give up on the 600 patent and what we ought to be looking at is some of the other claims? Well, I wouldn't say that we're willing to give up on the 600 patent, but I would say that we recognize that the 600 patent attacks the problem in a different way and with a broader claim scope. So the 600 patent claim one refers to a very specific set of features in the voice server, including the text-to-speech, the speech recognition, and the conferencing functions, thereby defining in that voice server something that's not conventional. There's no record to show that there were any such conventional voice servers having that capability. And then that tie-in for the purposes of solving the problem really arises in the connection of the cluster that includes that voice server with the web server and in the portion of the recitation with regard to the web server where it talks about the ability of the subscriber to access the network, which is the item being claimed, the network, by connecting to the web server via the internet. So it's that combination of the web server, the voice server, and the functionality, the specific special functionality of the voice server, which we believe provides that concept with regard to claim one. Let me just be sure that I understand the role of the provisional in all of this. The source code, but by omitting those details from the final specification, is the intention that the claims are not limited to what's in the provisional? No, Your Honor. We did not, by incorporating by reference, it was never our intention to have the code considered to be omitted from or separate from the overall disclosure. The overall disclosure, and therefore, to the extent that it played any role in the interpretation of the claims, it would then, if Judge Robinson had reviewed it and thought that it somehow limited the claims, it would have created a limitation. But your specification says that each of these steps is standard. The specification does indicate that there are a number of pieces where our inventor was taking those pieces, Intel boards, Solaris pieces of equipment, and so forth, but the underlying source code that actually made them work, actually made them work in an unconventional manner, so that those elements did not just operate as if they were pulled off the shelf and assembled together, but in fact, they were caused to do things that they had otherwise not been allowed to do before. Well, there's a difference between saying prosecution history can be used to help understand what you're discussing in your written description and saying you can use it to actually sort of contradict what's in your written description. I mean, if your written description says that it's off the shelf parts, pieces and parts, the fact that your provisional might have said differently doesn't help you, does it? Your Honor, I disagree with the notion that I think you have to really look at the entirety of the disclosure then, right? You have to look at what the source code says, you have to look at what the specification is. There is nowhere in the specification that they say that they operated those elements in a conventional fashion. They said that this was composed of those things, but it also said that the inventor had created some software pieces to better integrate these things. For instance, at column 5 of the patent, beginning at line 49 and down, yes, there is a recitation of various elements. However, those are tied together by specific algorithms and software, and to understand what that software and what those algorithms were, looking at the source code that was considered part of the overall specification informs us that these are not operating in a conventional manner. Okay, let's hear from the other side. Thank you, Your Honor. Mr. Lavenu. Lionel Lavenu from Finnegan for the appellees. So, we heard four specific things from appellant, and I'd like to address those four in order. The first thing we heard was the very first statement he made, was that this technology relates to combining the internet and telephone. Well, that's the mere definition of an abstract idea. We know that the combination of the internet with other technologies, specifically technology before the internet, and just putting that onto a computer, or putting that onto the internet, is abstract. That's the definition of abstract. Instead, what the appellant is doing is going to the source code and going to the specification, and we know from... He's claiming a lot of steps. I'm sorry, Your Honor? He's claiming a lot of steps. Every invention starts with an idea. Well, if we look at the claims, the claims pertain to three types of servers, a web server, a voice server, and a database server, using those three servers and having information come in on a telephone and go out on the internet, and that's exactly as he described it, and that's how the claims describe it. The unified note that Judge O'Malley noted, that's not even a recited element. That is in the preamble of the claim. So the basis of the claim are taking these three servers, which were known and described in the patent as being known. In fact, the very definition of the three servers is that the voice server uses a dialogic hardware and software component, all commercial off the shelf. The database server uses a Sybase component, commercial off the shelf, and the technology. So everything they cite to in their claims are all commercial off the shelf, and what he's trying to do is he's trying to take the specification, specifically this 400 or 500 pages of source code from the provisional application, and somehow import that into the claims. We know from Accenture that that's not allowed. We look to the claims, not to what is claimed, not as to what is described, and that's exactly what Judge Robinson... Right? I mean, you can't divorce the two. You cannot divorce the two, but you have to look and see if the scope of the claim is something that is abstract or not, and that's what Judge Robinson did. Judge Robinson, in her ruling, she basically concluded at the last sentence, she said, the claim solution is not described with enough specificity to place meaningful boundaries on the concept. So, I mean, that's what she did. She went through step one and step two of Alice, and she said, okay, does it meet step one of Alice? Is it abstract? And she concluded, yes, it's abstract. And she said, okay, well, let me go to step two. Is there an inventive concept? Is there something special, something additional, significantly more than the abstract idea? And it's when she was looking at that that she considered all of the arguments that Appellate is making today. She considered the unified issue. She considered the representation issue, whether or not the one claim that she looked at was representative of the 85 other claims, and she found that they were, just like in content extraction, where they looked at 242 claims and found that one claim was representative of those 242 claims. So, the mere fact that they are looking to try to salvage a claim that Judge Robinson found was not with enough specificity, that shows the abstractness of what is shown here. Isn't there a problem that so many of the other claims do have different aspects to them? I mean, shouldn't we at least vacate and remand for her to consider those other claims? Each one of those other aspects that you're mentioning, Judge O'Malley, those were all considered by Judge Robinson in her lower court opinion. There's a specific footnote where she goes through those issues in her analysis, and she also recites the very issues that Appellant is making today, and in the briefing before this court, also that was made before Judge Robinson. So, Judge Robinson has already considered those issues. She considered unified. She considered the distinctions between the claims. That's already been considered. And when you look at those claims, all 86 of those claims, with the representative claim that we looked at specifically, they are truly representative from the abstract idea of merely taking a telephone and sending telephone voice message over the internet as an email. That is the reason that Judge Robinson came to the conclusion that it was abstract, because there was no basis to go beyond that abstract idea. And I think that you could hear from counsel for Appellant, you could hear as he described the technology, he struggled in order to point you to a specific thing in the claim that took it outside of that abstract idea, because he kept going to the specification, he kept going to the claim, he mentioned that the inventor had had a hardware and software card that integrated these three known elements, these three known web servers. Well, none of that is claimed. That specific how he integrated, what he did to integrate it, were nothing even close to the step one analysis that we would look at, for example, in Enfish. In Enfish, we had a very new data structure that was created, and that data structure is what brought it outside of what was abstract, and it made it not abstract, because it was a new data structure. In McRow, we had this very specific ruling technology where it was allowed the lip syncing for animated characters. Well, this was something that had not ever been put down in a claim in that specific manner. So, you have the ruling technology of Enfish, you have the specific data structures of, I'm sorry, the ruling technology of McRow, the ruling technology, let me go back, the data structures of Enfish, and then you have Bascom. I mean, if we were to look at a case that may be similar to what's here, we look at Bascom, and Bascom had much more detail in the claim on what Bascom claimed than what Paris has. Paris doesn't have any of the detail that we had in Bascom. In Bascom, we had a very specific claim that dealt with a filtering scheme, and that filtering scheme was described with great particularity within the claim, not just in the specification, but how the filter worked, the levels of the filtering, and all of the background by that inside of the claim itself, not in the specification. And you see you don't have any of that from Paris. They cannot point to any of that, and you can even hear that in their argument and see it in their briefing. Now, one other thing that's important is that they also point to the fact of this fact that they take these three servers and they combine the servers, and basically what Counsel for Appellant says is he says, well, these three servers, they somehow, we combine them in a new way, but he doesn't point to any way in which they do that. Effectively, what he's doing is he's using what I call and what is described in the intellectual ventures case as the software brain. He's saying, well, basically, we take three servers, we combine them into what we define as a software brain, and that software brain allows these three servers to work together. Well, in intellectual ventures, the court made very clear that requiring the use of a software brain tasked with tailoring information and providing it to the user provides no additional limitation, claim limitation, no additional limitation beyond applying an abstract idea. It is restricted to the use of the internet on a generic computer. And that, the internet with a telephone, and that's exactly what we have here. We have the combination of the abstract idea of the internet with a telephone, and that is not claimed in a way. That's the issue. That is not claimed in a way that would make it non-abstract. So, I've talked about step one of the two-part Alice test. Under step two of the two-part Alice test, it also does not satisfy the requirements of step two. There's no inventive concept. In fact, if we look at, for example, cyber phone. Well, cyber phone is a case that dealt with taking a technology and having data sent over a telephone. Well, that's very similar to what we have here. That was found to be not eligible. If we look at content extraction, content extraction is taking hard data on paper and converting that into data that can be accessed over a computer. Well, here, what Paris is doing is they're taking a phone call and they're converting that into data that can be accessed over a computer. It's a conversion of data. Well, that in content extraction was found to be not eligible. In OIP, we have the sending, in the OIP case, we have the sending of data over a network, a multiple network. Their argument is that those are all pieces and parts and what they're doing here is all of those things. They say that they, yes, Judge O'Malley, they say that they are doing those three things together. But if you take three abstract ideas, there has to be something more to make them more than an abstract idea. So, if you take the telephone transmission of cyber phone, you take the data conversion of content extraction, you take the sending over a network of OIP, if you just listen to those, those are abstract ideas. And even if you combine those three abstract ideas, that does not make them non-abstract. No, but wouldn't, if you're talking about combining the ideas, aren't we now talking about Section 103 in obviousness, not 101? Well, if you talk, I understand Judge Newman, if you're talking about combining ideas, you're talking about combining concepts and whether those concepts as claimed are eligible. And so, not whether or not they're anticipated under 102 or obvious under 103, but whether or not they're eligible as stated as an idea. And so, the problem with the claims that are in the Paris case is that they're not claimed in a way, as Judge Robinson found, they're not claimed with enough meaningful limitations to make them non-eligible, or eligible, to bring them outside of non-eligibility. And that was the reason that Judge Robinson found that they were not eligible because they did not have that something more, that addition, and even the combination of these three things that we spoke about, Judge O'Malley, it's not a combination that would be removed from the use of computers, is merely that, what computers do, and it does not change the analysis under Section 101. Well, that's exactly what's happening here. We merely have telephone data that is converted into data, and then it is sent over a network. Those three things do not make it eligible. The bottom line of what Paris is trying to do here is they make this analogy in their opening brief, which is pretty interesting. They say, well, if you don't allow us to have a claim, if our claims are not patent eligible, then look at the telephone, look at the printing press, look at the cotton gin, look at the robot. None of those would have, we would not have had patents for any of those if you don't allow us to have that. The problem is, is it all goes back again to the claim. In each one of these situations, Alexander Graham Bell, I don't know about Gutenberg, but Eli Whitley and George Duvall with the robot, all of those individuals, when they claimed their patents, they claimed them in a way that were eligible and that were patentable. Here, however, the problem is they did not claim their alleged inventions in a way that was patentable because they were too broad. That type of too broad definition of every type, as Judge O'Malley, you're referring to, well, what about those three combinations? Well, if we take those three combinations, it's so massive, it's so large, it encompasses so much. Phone technology over the internet, that preempts the entire field. That's exactly what Alice tells us that we cannot do. If it's so broad that it preempts everything, then we cannot allow that. That was described in Amdocs, Judge Newman, recently in the opinion that you co-authored or that you joined in. All of these recent cases have recognized that if you preempt everything, then it cannot be patent eligible. That's what they're doing here. In fact, if we look at the specification, the specification at column 7, line 13, specifically describes a system that their own invention is in an abstract way in the specification, which is taking the functionality of having a voice message come in, taking that voice message, converting it into data, and then sending that voice message out over the internet. That is what they describe as the acts of an efficient secretary. Well, just as counsel for repellent said when he walked up here, their technology is the combination of internet and telephone. That is the absolute definition of an abstract idea under Alice step 1 or under Alice step 2. Okay, any more questions? Any questions for counsel? Thank you. Mr. Pietrangelo. Thank you, Judge Newman. Just a few points. First, I just want to be clear on what we're using the source code for in the specification. Specification under McRow is appropriate to look at to be able to understand what the claims are directed to. What we're saying is the claims are directed to a technological solution. Looking at the specification in the source code helps us with that. We rely more specifically on the source code to rebut the notion that these are generic elements under step 2. Defendants have just made the bald assertion that these operated under that assumption and never actually provided any analysis with regard to an ordered combination, just accepted the notion that they operated in a conventional manner. The source code along with the specification shows clearly that that's not the case. I'd just like to mention the automated secretary issue. McRow actually plays more in our favor and defendant's letter on this in response to ours is suggestive of the fact that it's entirely appropriate to automate a process that is tedious, that is time-consuming and manual, if you do it in a technological manner. And we, in fact, have done that. Show me parts of the claims that you think give the most structure. Parts of the claims that give the most structure, let me refer to page 120, claim 1, which is on page 7 and 8 of the blue brief. So the first piece is the voice server. The second piece is that that voice server operates with a database server that has specific information in it and is And as this claim continues over to page 8 of the blue brief, we see specifically how that voice server is determined to operate, in particular with regard to the natural voice spoken commands and how those are processed and what the result of that processing is. And the result of that processing together with the file server and the web server operate together so as to provide the communications that go out, more specifically the particularized message and notification that gets sent to the user. So it's when we combine the pieces together, it's the web server with a specially operating voice server in particular, which provide the connections that allow a connection to the telephone network and to the internet, as well as providing the configurability that defines where the messages and notifications go over which network. If all of that's in there, I guess, and this gets into a whole separate question, I guess it's a 112 question, but then where do you describe how that specialized system works in the specification? The specialized system is described in connection with the drawing figures, which lay out the system in figures 1 and 2 and I believe it's figures 4, 5, and 6, which specifically lay out in more detail the arrangement of the voice servers and then underlying those operations of the voice servers and the email and web servers and their connections is the source code that was incorporated by reference into the specification. Okay, any more questions? Thank you. Thank you both. The case is taken under submission.